FILED
AT _____
JUL 17 2017
ROBERT N. TRGOVICH, CLERK  M
U.S DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Michael A. Cook v. Ball State University et al

Case Number: 4:17CV 61

United States District Court

Northern District of Indiana

In the:

United States District Court

Northern District of Indiana

Charles A. Halleck Federal Building

Lafayette, Indiana

### Complaint of Michael A. Cook

Come now, before the United States District Court for the Northern District of Indiana at the Charles A. Halleck Federal Building in Lafayette, Indiana, **MICHAEL A. COOK**, on this 14th day of July, 2017, to make a complaint against **BALL STATE UNIVERSITY, DR. MICHAEL GILLILAN ET AL.**

Plaintiff Michael A. Cook now comes before the United States District Court for the Northern District of Indiana to inform the court that Plaintiff Cook is submitting this complaint and believes that Defendant(s) Ball State University, Dr. Michael Gillilan et al are violating Cook's Constitutional 1st Amendment right and civil rights as protected by federal law and alleges that Defendant(s) are engaging in unlawful discrimination prohibited by Title II of the Americans with Disabilities Act of 1990 and unlawful discrimination prohibited by Title IX of the Education Amendments of 1972.

Michael A. Cook, coming before this court, now wishes to make a sworn statement

1

which summarizes the events that have led to the filing of this complaint in United States District Court.

I, **MICHAEL A. COOK,** come now before the United States District Court for the Northern District of Indiana at the Charles A. Halleck Federal Building in Lafayette, Indiana to make a sworn statement and provide a summary of events in this complaint to the aforementioned.

## Brief Summary of Events

On or about February 10, 2017, Michael A. Cook reported a sexual assault to Office of Victim's Services (OVS) at Ball State University (BSU or Ball State or simply "the university"). Cook was sexually assaulted by a former student, Randy Ray Wright, on or about Spring of 2016. Cook was referred to Dr. Michael Gillilan, Director of Student Rights and Community Standards (SRCS) as Dr. Gillilan is also a Title IX investigator. Cook requested three (3) remedies as part of the Wright Title IX complaint. They were as follows:

1. Issue a campus trespass notice against Randy Ray Wright.

2. Request a grade appeal for Spring 2016.

3. Issue a No Contact Order (NCO) against Stephanie "Stevie" Jarrett.

## Summary of Events of No Trespass Remedy

Cook received information from OVS and Dr. Gillilan in February 2017 when Cook launched the initial Wright Title IX complaint as to how to obtain an order of protection in the Delaware County Courts and proceed with a criminal investigation into Wright's sexual assault of Cook. Cook reported the sexual assault to the Muncie Police Department (MPD) in early February 2017 to Sergeant Amy Kessler of the Sexual Assault Response Team (SART) and Cook further filed for an order of protection on February 17, 2017 in the Delaware County

2

Courts, *Cook v. Wright*. The cause number assigned to that case was **18CO3-1702-PO-76**. According to court documents filed *Cook v. Wright*, "[Wright] held Cook down at knife point, masturbated and then ejaculated into [Cook's] face, commenting, "Here's your dinner." The order was granted ex-parte four (4) hours after Cook filed with the Delaware County Clerk's Office. Cook notes Wright did not contest the petition in the time prescribed by law and that Wright was lawfully served notice of such on March 6, 2017.

Cook informed Dr. Gillilan of the granting of the order of protection and requested that the university immediately issue a campus no trespass notice against Wright to provide for Cook's safety. Dr. Gillilan informed Cook that the university had to send notice to Wright before issuing the trespass. Cook informed Dr. Gillilan by email that service for the order of protection was successful on March 6, 2017 according to a victim's notification sent to Cook's iPhone from noreply@courts.in.gov. The university did not issue the trespass notice until March 21, 2017 according to the publicly available trespass notice on the Ball State University website, www.bsu.edu. Cook contends that the timeframe it took for the university to issue the trespass notice, nearly three (3) weeks after Cook filed for and was granted an ex-parte order of protection, was unacceptable given the nature of the assault.

<u>Summary of Events of Grade Appeal Remedy</u>

Cook further requested a grade appeal for Spring 2016 as that was the time in which Cook was assaulted. Cook received two failing grades in HIST 411 and POLS 140 that semester and Cook requested to retroactively withdraw from the courses in which Cook received the failing grades. Cook sent numerous emails to Dr. Gillilan inquiring as to the status of Cook's grade appeal between February 2017 and April 2017 and Cook received little or no email communication from Dr. Gillilan as to the status of Cook's grade appeal. Email communication,

3

in accordance with university policy, is the official mode of communication between students, administrators, faculty and staff when conducting official university business. Dr. Gillilan did not provide that remedy as requested and Cook requested a new Title IX investigator, Dr. Tiffany Peters, on or around April 25, 2017. Cook received feedback from professors the same day and a grade change to "W" for HIST 411 occurred the next day, on April 26, 2017. The grade appeal for POLS 140 was changed shortly thereafter. Cook contends, based on Cook's contact with Dr. Peters and Dr. Peters follow up emails explaining the actions Dr. Peters was taking to resolve the Title IX remedy requests, demonstrates Dr. Gillilan failed to follow proper procedures and protocols during the initial Title IX investigation.

Cook contends that the timeframe, nearly three (3) months after Cook reported the sexual assault and requested the grade appeal remedy, was not timely under university Title IX guidelines, which aim to conduct investigations, resolve complaints and provide remedies within thirty (30) days of being reported. Cook further contends that Dr. Gillilan did not take reasonable steps to begin the grade appeal process.

<u>Summary of Events of the No Contact Order (NCO) Remedy</u>

Cook requested an NCO be issued against Stephanie "Stevie" Jarrett per Cook's initial Wright Title IX complaint as Cook had reason to believe Jarrett was in contact with Wright. Wright, Jarrett and Cook were mutual friends. Cook and Jarrett were "friends with benefits", a colloquial term for intimate or sexual relationships between friends. Cook had informed Jarrett on numerous occasions, dating as far back as November 2016, to cease contact with Wright. Cook confided in Ms. Jarrett after a moment of intimacy that Cook was sexually assaulted by Wright and further confided that Cook was being stalked by Wright. Cook informed Dr. Gillilan that Cook believed Wright and Jarrett were stalking Cook based on email communication Cook

4

received from Wright on or about February 9, 2017. Cook contends that Jarrett had commented to Cook previously that Jarrett found Wright attractive and was setting up dates with Wright sometime in late Spring 2016. Cook contends that the NCO remedy request was reasonable given that Cook informed Jarrett that 1: Crime(s), sexual assault and stalking, were perpetrated against Cook by Wright and 2: Cook informed Jarrett on multiple occasions to cease contact with Wright. Cook believed Wright would manipulate or coerce Jarrett into providing information about Cook to Wright. Cook contends that Ms. Jarrett did in fact communicate and have receptive contact with Wright.

Dr. Gillilan did not provide the NCO per Cook's initial Title IX remedy request and furthermore, Dr. Gillilan issued an NCO against Cook on behalf of Ms. Jarrett on March 20, 2017. Cook sent an email to Dr. Gillilan and requested documentation as to why the NCO was issued against Cook and scheduled a meeting with Dr. Gillilan to discuss the matter. When Cook attended a meeting with Dr. Gillilan and requested the reason as to why the NCO was issued, Dr. Gillilan alleged that Cook was involved in an incident, according to a notice sent to Cook's macook@bsu.edu email account. Cook inquired as to what the incident was and Dr. Gillilan did not provide Cook with an explanation as to what the incident was. Cook inquired to see evidence as to why Dr. Gillilan had issued the NCO against Cook on Jarrett's behalf, to which Dr. Gillilan responded, "You know why." and "You created this situation, not me." and further commented, "Just because you were assaulted, doesn't mean you can't do this to someone else."

Cook informed Dr. Gillilan that Cook did not understand what Dr. Gillilan was referring to and requested that documentation be presented to Cook immediately as to why the NCO was issued against Cook on behalf of Jarrett and Dr. Gillilan refused to provide that evidence to Cook. Cook informed Dr. Gillilan that Cook believed Jarrett was retaliating against Cook for

5

Cook's lawful Title IX remedy request. Dr. Gillilan further responded to Cook's claims by replying, "I think she does have reason." Dr. Gillilan did not charge Cook with a violation of the Student Code of Conduct for the alleged incident nor did Dr. Gillilan inform Cook that Cook was subject to any Title IX investigation launched by Jarrett to warrant the issuance of the NCO. No Contact Orders (NCO's) are interim measures to provide for student's safety. There are limited or no guidelines posted on the www.bsu.edu website describing the process or procedures to obtain an NCO.

Cook believed Jarrett was not being truthful about Jarrett's contact with Wright and further informed Dr. Gillilan that Cook believed Wright was stalking Cook through Jarrett. Dr. Gillilan responded, "Stevie can talk to whoever she wants." Cook contends that Jarrett was in fact stalking Cook or being manipulated into stalking Cook by Wright and referenced email communication with Wright that Cook submitted to Dr. Gillilan in which Wright used Jarrett's nickname, "Stevie". Only friends of Jarrett would know her nickname "Stevie".

Cook provided documentation to Dr. Gillilan in which Wright disclosed that Wright had text message communication between Cook and Jarrett in his possession that Jarrett had forwarded Wright. Cook contends that this exchange showed a clear pattern of stalking as Cook had previously requested, on multiple occasions, that Jarrett stop speaking with Wright, dating as early as November 2016. Cook had confided in Jarrett that Wright sexually assaulted Cook and further informed Jarrett that Cook was being stalked and was obtaining an order of protection and that Jarrett continued communicating with Wright despite multiple requests that Jarrett not do so.

Cook informed Dr. Gillilan that Cook is legally blind and registered with Disability Services at Ball State University. Cook informed Dr. Gillilan to contact Larry Markle, Director

of Disability Services, to confirm this. Cook communicated with Dr. Gillilan that Cook would not be able to comply with a portion of the NCO, that Cook remain fifty (50) feet away from Jarrett anywhere on or off campus. Cook was further restricted from being in or near Elliot Hall, an on-campus dormitory and the attached dining facility. Cook informed Dr. Gillilan that Jarrett knew of Cook's legal blindness and that Jarrett would violate Cook for the NCO in retaliation for initially requesting the NCO be issued against Jarrett per the Wright Title IX complaint. Dr. Gillilan responded, "That could very well be. I expect you to act in a way that your actions are not questioned." Cook further requested information as to how to appeal and Dr. Gillilan informed Cook that Cook would have to submit the appeal in writing to SRCS. Cook did so and did not receive any communication as to the status of the appeal.

On or around April 25, 2017, Cook became aware after Cook received notice that Cook was involved in an incident and was being charged with "failure to comply" under the Student Code of Conduct for failing to follow the instructions of a university official in relation to the NCO issued against Cook on behalf of Jarrett. Cook did not see notice of this in Cook's BSU email account as students can receive hundreds of messages per day in their BSU email accounts. Cook contends that Cook did not learn of the violation until sometime around April 25 as Cook had been studying for finals and working on final projects during this time, as the academic year ends in early May. Cook did not learn of this incident until Cook received official mail correspondence from the university at Cook's permanent address and Cook's parents informed Cook after opening and reading the notice, sometime around April 24, which stated a hearing was scheduled for April 28, 2017 before the Conduct Review Board, which acts in a similar manner to a tribunal. Cook immediately notified Dr. Gillilan and scheduled a meeting to discuss the matter on April 25, 2017.

In this meeting, Dr. Gillilan further acted unprofessional and accusatory towards Cook, being upset Cook had not attended previous meetings that were scheduled. Cook informed Dr. Gillilan that Cook did not receive notice until correspondence arrived at Cook's permanent address and apologized for any confusion. Cook informed Dr. Gillilan that on the date of the alleged incident, March 27, 2017, Cook was at the home of Jarrett DeMonia, a friend of Cook's who lived at 208 S. Nichols Street in Muncie, Indiana. Notice from the university about the alleged incident states that Jarrett's boyfriend lived at 210 S. Nichols Street, Muncie, Indiana. Cook informed Dr. Gillilan that Cook was unaware of this fact and that Cook did not see nor have contact with Jarrett on that day. Dr. Gillilan informed Cook that SRCS had conducted an investigation which included tracking down the Uber Cook had used and that Dr. Gillilan spoke with Cook's friend DeMonia and DeMonia's roommates who informed Dr. Gillilan that they did not know a Michael Cook. Cook contends that DeMonia and roommates were likely unaware of Cook's last name as Cook and DeMonia had met in Park Hall, an on-campus dormitory, the previous semester. Cook's friend DeMonia spoke with Dr. Gillilan in person at this meeting and informed Dr. Gillilan of the same. Cook was found not responsible for that violation and the NCO was further expanded upon and Cook was instructed not to be within one hundred (100) feet of Jarrett's vehicle. Cook again reiterated to Dr. Gillilan that Cook was legally blind and would not be capable of complying with that request.

<u>Summary of Events from May 2017 Onward</u>

Cook filed an unlawful discrimination complaint with the United States Department of Education Office for Civil Rights (OCR) on May 22, 2017 and further filed an unlawful discrimination complaint with John Bowers, Director of Institutional Equity and Internal Investigations in the Office of General Counsel (OGC) at Ball State University on June 21, 2017

8

alleging unlawful discrimination on the basis of sex and disability. Cook had previously been in contact with Mr. Bowers of OGC in April 2017 when Cook expressed concerns about the NCO and Mr. Bowers provided Cook with guidance as to how to appeal the issue with Dr. Gillilan.

Cook further opened a separate Title IX complaint against Stephanie Jarrett for stalking and harassment after attending a contempt hearing for the *Cook v. Wright* protection order (**18CO3-1702-PO-76**) on June 16, 2017. At that hearing, Wright presented documents to the court that included text message communication forwarded to Wright by Jarrett and text message communication between Wright and Jarrett. Cook immediately filed the discrimination complaint with BSU Office of General Counsel and launched the Title IX investigation against Jarrett after learning of these facts, fearing that Cook was being stalked. Cook requested that an NCO be immediately issued against Jarrett as an interim measure. That NCO was issued by Matt Hageny, Interim Assistant Director of SRCS, on June 23, 2017.

Cook filed police report, #**2017-8480** with Deputy Robert Barrett (unit # 37-15) of the Jasper County Sheriff's Office on July 9, 2017, alleging that Jarrett was engaging in criminal stalking. Cook informed Title IX and the university of this and requested they immediately rescind the NCO Jarrett filed against Cook to prevent further retaliation for filing a police report for criminal stalking. As of the date of this complaint, the university has not yet honored that request and a state of mutual NCO's issued by Ball State SRCS exists between Cook and Jarrett. Cook further filed for an order of protection against Jarrett in the Delaware County Courts and that petition is pending.

Cook has sent multiple notices and cease and desist letters to the university by postal mail, certified mail and bsu.edu email. Ball State confirmed receipt of these notices through Office of General Counsel. Cook informed Defendant(s) in such notices that they were in

9

violation of Cook's 1st Amendment right and were engaging in unlawful discrimination prohibited by Title II of the Americans with Disabilities Act of 1990 and Title IX of the Education Amendments of 1972. Ball State has refused to respond appropriately and immediately despite being informed of such by Cook.

Cook informed Defendant(s) that if they did not cease and desist immediately in their unlawful behavior and dismiss the NCO that Jarrett had filed against Cook in retaliation for Cook's lawfully requested Title IX remedies that Cook would file suit in United States District Court. As of July 10, 2017, the United States Department of Education Office for Civil Rights has launched an investigation into Ball State and Dr. Gillilan's unlawful and discriminatory behavior.

### Plaintiff's Requested Relief

1. Order Ball State University to, immediately and without delay, dismiss the No Contact Order (NCO) that Stephanie "Stevie" Jarrett filed against Cook.

2. Order Ball State University to prohibit Dr. Michael Gillilan from retaliating against Cook for filing unlawful discrimination complaints with Ball State University Office of General Counsel and the United States Department of Education Office for Civil Rights.

3. Order Ball State University to prohibit Dr. Michael Gillilan from having any authority over Cook and prohibit Dr. Gillilan from:

    a. Bringing disciplinary action against Cook

    b. Interfering with Cook's enrollment at the university

    c. Interfering with Cook's education at the university

4. Order Ball State University to delegate the above responsibilities outlined in a, b and c to another individual in SRCS per Ball State's guidelines and policies in delegating authority of

such.

5. Order Ball State University to, immediately and without delay, cease and desist in their violation of Cook's Constitutional 1st Amendment right.

6. Order Ball State University to, immediately and without delay, cease and desist in their unlawful discrimination prohibited by Title II of the Americans with Disabilities Act of 1990.

7. Order Ball State University to, immediately and without delay, cease and desist in their unlawful discrimination prohibited by Title IX of the Education Amendments of 1972.

8. Order Ball State University to fully comply with the investigation that the Department of Education Office for Civil Rights has launched against the university.

9. Order Ball State University to reimburse Michael A. Cook for any reasonable expenses related to the university's incompetence and negligence, including but not limited to, the following:

a. Travel costs

b. Court costs

c. Attorney's fees and legal bills

d. Tuition, room and board costs for Spring 2016 and Spring 2017 semesters

e. Any other reasonable expense incurred as a result

10. Order Ball State University to pay damages to Michael A. Cook in the amount of $2,000,000 (two million dollars) as a result of emotional distress, mental anguish and suffering endured by Cook as a result of the university's unwillingness to comply with federal law despite being informed of their violations of the same by Cook.

11. Order Ball State University not to retaliate against Cook for exercising Cook's right to file suit in United States District Court and file unlawful discrimination complaints with the

United State Department of Education Office for Civil Rights and Ball State University Office of General Counsel.

12. Order Ball State University not to interfere with Cook's expected graduation date of December 2017.

13. Order Ball State University to implement reasonable measures to prevent unlawful discrimination and prevent such egregious behavior from occurring in the future in order to protect the interests of victims of sexual assault and students with disabilities on the Ball State University campus.

I, **MICHAEL A. COOK**, do swear under the penalties for perjury that the foregoing statement is true and correct, to the best of my knowledge, so help me God.

X _/s/ Michael A. Cook_

Michael A. Cook

4700 W. 1100 N.

Wheatfield, IN 46392-7700

219-964-9960    macook@bsu.edu

Executed on this 14th day of July, 2017.